

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-5-2003

# USA v. Harrigan

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3911

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation
"USA v. Harrigan" (2003). *2003 Decisions.* Paper 140.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/140

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 02-3911

UNITED STATES OF AMERICA

v.

DESHAUNE HARRIGAN,

Appellant

Appeal from the United States District Court for the Virgin Islands
(Crim. No. 00-559)
District Court: Hon. Raymond L. Finch

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 29, 2003

Before: ROTH, McKEE and COWEN, Circuit Judges.

OPINION
(Filed: November 5, 2003)

McKEE, Circuit Judge.


We are asked to determine if the District Court for the District of the Virgin

Islands erred by accepting Deshaune Harrigan's guilty plea but failing to dismiss certain

charges as he and the government had agreed in the written plea agreement he relied upon

in pleading guilty. For the reasons that follow, we will affirm.

1

# I.

Because we write only for the parties, it is not necessary to recite the facts of this case in detail. Accordingly, we will only briefly mention those facts necessary to our discussions.

Harrigan shot and killed Jason Carroll, the son of the First Assistant United States Attorney for the District of the Virgin Islands. The Territorial Government of the Virgin Islands thereafter charged Harrigan with second degree murder, possession of an unlicensed handgun, possession of a firearm during a crime of violence, and possession of a firearm with an obliterated serial number. The information was later amended by substituting first degree murder for the original charge of second degree murder.

After indicting Harrigan, the government of the Virgin Islands continued its investigation in cooperation with the U.S. Department of Justice ("DOJ")[1] and the Office of the Virgin Islands Attorney General. The investigation resulted in a federal grand jury indicting Harrigan on five charges: first degree murder in violation of 14 V.I.C. § 922(a); possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k); use a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1); possession of a loaded firearm in violation of 14 V.I.C. § 2253(a); and possession of a firearm within a school zone in violation of 18 U.S.C. § 922(q). The

---

[1] The prosecution was shifted to the Criminal Division of the U.S. Department of Justice because of the victim's close ties to the U.S. Attorney's Office.

defendant was arraigned on these charges in the District Court for the Virgin Islands and the case was assigned to Judge Thomas K. Moore.

The "local" charges were thereafter dismissed with prejudice by the territorial court. Subsequently, Harrigan moved to dismiss the federal charges pending in the district court, arguing that the DOJ was precluded from bringing these charges because they had been dismissed with prejudice in the territorial court. Judge Moore denied his motion. Moore then recused himself from the case due to his relationship with the victim's father.[2] The case was reassigned to Judge Raymond L. Finch.

In January 2002, Harrigan and the DOJ executed a plea agreement. Pursuant to that agreement, Harrigan pled guilty to murder in the second degree and possession of a firearm during a crime of violence. The government agreed to recommend consecutive sentences of 10 years on the murder charge and 5 years on the firearm possession charge. The government also agreed to move to dismiss the remaining charges in the indictment. The court initially sentenced Harrigan on October 10, 2002; it resentenced him on December 11, 2002. This appeal followed.

## II.

---

[2] The exact relationship is unclear. The only information in the record about why Judge Moore recused himself is a footnote in his Memorandum and Order dated May 4, 2001, which states: "Although neither the defendant nor the prosecution had raised it, I also noted my reluctance to sit on the trial of Mr. Harrigan since the person he is charged with shooting was Jason Carroll, the son of the First Assistant United States Attorney, James C. Carroll, who resides on St. Thomas. The parties agreed that Chief Judge Raymond Finch would handle all further proceedings." A. 140.

On appeal, Harrigan raises five issues.  First, he argues that his due process rights were somehow violated because the government of the Virgin Islands and the federal government conducted a joint investigation and prosecution.  Second, he claims that the district court could not try him on charges that the V.I. court had dismissed with prejudice.  Third, he argues that his right to a speedy trial was violated.  Fourth, he argues that his fundamental right to have an unbiased jurist hear his case was somehow violated when Judge Moore abused his discretion and denied his motion to dismiss before recusing himself.  Finally, Harrigan argues that the cumulative effect of the prosecutor's abuses undermined the fundamental fairness of the trial process and therefore denied him the due process of law.

Our review of any legal issues that have not been waived by the guilty plea is plenary.  *U.S. v. Benitz*, 21 F.3d 37, 38 (3d Cir. 1994). We review the district court judge's decision to deny the requested recusal for abuse of discretion. *SecuraComm Consulting Inc. v. Securacom Inc.*, 224 F.3d 273, 278 (3d Cir. 2000).

## A.

Because Harrigan pled guilty and does not challenge the validity of his guilty plea, we must first consider the extent to which he has waived the issues he is now attempting to raise.  *U.S. v. Panarella*, 277 F.3d 678, 682 (3d Cir. 2002), *cert. denied*, 537 U.S. 819 (2002).  A guilty plea results in a waiver of non-jurisdictional claims that are not explicitly preserved by entering a conditional guilty plea. *Id.* at 689.

4

Harrigan's written plea agreement did not condition his guilty plea on his ability to raise any issues on appeal. Similarly, he did not attempt to enter a conditional guilty plea at his change of plea hearing, nor even suggest that he intended to appeal any aspect of his prosecution. Following his plea, he waited four months before moving to withdraw his guilty plea. Therefore, he clearly "eschew[ed] the benefit of Rule 11(a)(2)**;"** a rule that would have allowed him to enter a conditional plea of guilty and thereby preserve the issues he is now attempting to raise. *Panarella*, 277 F.3d at 682.

Jurisdictional claims survive an unconditional guilty plea because they relate to "the very power of the State to bring the defendant into court to answer the charge brought against him." *Blackledge v. Perry*, 417 U.S. 21, 30 (1974). In *Blackledge*, a defendant who pled guilty to a felony later alleged that his being charged with the felony violated his right under the Double Jeopardy Clause of the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment. *Id.* at 23-24. The Supreme Court found that his due process claim was jurisdictional and, thus survived his guilty plea. *Id.* at 30-31. The Court noted that the practical effect of the alleged due process violation and double jeopardy violation was the same; both violations operated "to prevent a trial from taking place at all, rather than to prescribe procedural rules that govern the conduct of a trial." *Id.* A year later, the Court ruled that a double jeopardy claim also survives an unconditional guilty plea. *Menna v. New York*, 423 U.S. 61, 62 (1975) (per curiam).

The government concedes that two of Harrigan's claims are jurisdictional and

5

therefore survive his guilty plea: his claim that due process was denied by prosecutorial overreaching, and his claim that collateral estoppel barred prosecution of charges in federal court after the territorial court had dismissed them with prejudice. Government's Brief at 13. However, the government argues that Harrigan's speedy trial claim and his challenge based upon an allegedly biased jurist are waived by the guilty plea.

We agree that challenges based upon an alleged violation of the right to a speedy trial are non-jurisdictional claims. *Coffin*, 76 F.3d at 497; *see also U.S. v. Bradford*, 113 F.3d 515, 526 (5th Cir. 1997) (stating that the defendant's failure to move for dismissal prior to an entry of a plea of guilty constitutes a waiver of the right to dismissal for a Speedy Trial Act violation). Such claims go to the timing of a defendant's trial, not the right of the government to bring a defendant into court to answer charges.

Harrigan's challenge to Judge Moore's failure to dismiss requires some discussion. Therefore, we will assume that it was not waived and briefly address it.

**B.**

We review Judge Moore's recusal decision for abuse of discretion. Under 28 U.S.C. § 455, district court judges must recuse themselves only where their "impartiality might reasonably be questioned." The only evidence on the record regarding Judge Moore's decision to recuse himself *sua sponte* was the aforementioned footnote in his May memorandum which indicates only that he knew the father of the victim. The government's brief takes it a step further, indicating that Moore had "a professional

6

acquaintance" with the victim's father, the First Assistant United States Attorney for the District of the Virgin Islands. We need not decide whether Judge Moore was obligated to recuse himself under these circumstances. Judge Moore clearly did recuse himself in an abundance of caution, and Harrigan's claim that he is somehow entitled to relief because Judge Moore did not recuse himself earlier or dismiss the indictment is frivolous. In fact, his claim that Judge Moore should have dismissed the charges is inconsistent with his claim that the judge should have recused himself earlier. Obviously, a judge with a personal relationship to a defendant's family can not dismiss criminal charges without creating the very appearance of impropriety that § 455 was enacted to prevent. Harrigan's position to the contrary, and his attempt to leverage relief from Judge Moore's recusal, evidences more desperation than merit.

## C.

Harrigan next argues that his due process rights were violated because the Virgin Islands and the federal government jointly investigated him. The prosecutors abused their power by going forum shopping together, he argues, and shifting his prosecution to the district court after it had been pending for months in the territorial court. He claims that their joint effort gave the prosecutors access to federal resources to investigate the shooting, and it also pressured an eyewitness into testifying against Harrigan by forcing

him to testify in front of a federal grand jury regarding his own potential culpability.[3] Neither of these were legitimate reasons for transferring the case over, Harrigan argues.

Generally, if criminal charges can be brought in more than one forum, prosecutors are free to exercise their discretion in selecting the forum where they will bring the charges.[4] Thus, nothing prevents prosecutors from seeking dismissal of a state or local prosecution in favor of a federal forum. *U.S. v. Melendez*, 60 F.3d 41, 50 (2d Cir. 1995). In order to show that a prosecutor abused this discretion and thereby violated a defendant's due process rights, a defendant must present "clear evidence" that the decision to prosecute in a particular forum was predicated on impermissible grounds. *U.S. v Armstrong*, 517 U.S. 456, 464-65 (1996).

There is no such evidence here. It is clearly not improper to select a federal forum to gain a legitimate prosecutorial advantage, and Harrigan alleges nothing more. He does not even argue that the prosecutor's decision to pursue the charges in federal court rather than the territorial court was driven by an impermissible motive.

---

[3] Harrigan also argues that transferring the case to the district court created a conflict of interest. However, he does not explain this conflict. Presumably the conflict arose from the victim being the son of the First Assistant United States Attorney, who usually prosecutes these cases, and Judge Moore's relationship with the victim's father. However, the Criminal Division of the U.S. Department of Justice took over the federal prosecution, and Judge Moore recused himself. There is no reasonable basis for thinking there is a conflict of interest here.

[4] 48 U.S.C. § 1612(c) gives the U.S. District Court for the Virgin Islands concurrent jurisdiction over certain Virgin Islands territorial charges, thereby giving prosecutors the discretion to bring those charges in the territorial courts or in federal court.

**D.**

Harrigan's claim that the federal court was estopped from trying him on the same charges that the territorial court had previously dismissed with prejudice is similarly meritless. Harrigan first concedes that the territorial and federal courts generally have dual sovereignty over his crimes, but he argues that he falls into an exception where a second prosecution is barred because the one sovereign acts as the tool of the other in bringing a subsequent prosecution after charges are dismissed. He then argues that, even if the prosecutions were conducted by two sovereigns, the territorial court's dismissal of the charges with prejudice collaterally estopped the federal district court from proceeding.

We agree that a subsequent federal prosecution is barred when it is merely a ploy for bringing what is really just another state prosecution. *Bartkus v. Illinois*, 359 U.S. 121, 123-24 (1959). However, the exception precluding a subsequent federal prosecution is not triggered merely because state and federal prosecutors' offices work together to investigate a case. *Id.* Harrigan's prosecution is merely an example of the cooperation common among prosecutors with concurrent jurisdiction.

Harrigan offers two cases to support his claim that a "dismissal with prejudice" forever precludes the government from reprosecuting a case. *Dawsey v. Government of the Virgin Islands*, 931 F.Supp. 397, 402 (D.V.I. 1996); and *Rinaldi v. U.S.,* 434 U.S. 22, 29 (1977). However, neither case involves the effect of such a dismissal on a prosecution in a different jurisdiction. Rather, they discuss courts' power to deny government

9

motions to dismiss charges under Fed. R. Crim. P. 48(a). He also cites to American Jurisprudence Second, which states that "the State's appropriate remedy after [a dismissal with prejudice] is to appeal rather than request reconsideration of the court's order." 21 Am. Jur. 2d, Criminal Law § 778 (1998). This is true, but it says nothing about the federal government's right to prosecute based on the same facts that supported criminal charges in the "territorial" courts.

Harrigan's final argument on this issue is a bit garbled. He seems to be arguing that no charge dismissed with prejudice in the territorial court can be brought in federal district court because the latter's jurisdiction is derived from the territorial court's jurisdiction. Although Harrigan does not say so, we believe that he is referring to jurisdiction granted to federal courts under 48 U.S.C. § 1612(c), which effectively gives prosecutors the discretion to bring certain Virgin Islands territorial charges in the territorial courts or in federal court.

However, a dismissal with prejudice in a local, state or territorial court does not necessarily have a preclusive effect on a subsequent prosecution in federal court. Where a defendant is indicted in two courts with concurrent jurisdiction, a dismissal with prejudice only bars re-prosecution in the court dismissing the charges. *See, e.g., U.S. v. Lindsey*, 47 F.3d 440, 444 (D.C. Cir. 1995), vacated on other grounds *sub nom*. Robinson v. U.S., 516 U.S. 1023 (1995).

Here, the defendant was indicted by the federal government before any trial in the

territorial court. The territorial prosecutor then asked the territorial court to dismiss the charges, and acquiesced to a dismissal with prejudice.

## IV.

For all of the above reasons, we will affirm the district court's judgment of sentence and conviction.[5]

TO THE CLERK OF THE COURT:

Please file the foregoing Opinion.

/s/ Theodore A. McKee
Circuit Judge

[5]Harrigan also claims that the cumulative effect of the abuses he has identified denied due process. Since we conclude there were no such abuses, we need not address this claim.